CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Sara Gunderson, Esq., SBN 302582
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
sarag@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love**, | **Case:** 5:18-CV-00208-FMO-KK |
| Plaintiff, | **Plaintiff's Memorandum of Points and Authorities** |
| v. | |
| **Manuel R. Cardenas; Margarita Arriaga**; | Date: Nov. 15, 2018 ~~November 8, 2018~~ ~~10 AM~~ |
| Defendants. | Time: 10:00 AM ~~Time: (6ᵗʰ Floor)~~ |
| | Courtroom: 6D |
| | Hon. Judge Fernando M Olguin |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................ 1

I.   PRELIMINARY STATEMENT ..................................................... 1

II.  RELEVANT FACTS ..................................................................... 2

III.   LEGAL STANDARD................ **Error! Bookmark not defined.**

IV.   THE LACK OF ACCESSIBLE PARKING............................... 4

A.  Plaintiff is Disabled........................................................ 6

B.  Defendants Own and Operate a Place of Public Accommodation 6

C.  The Store Had Barriers That Were Readily Removed ............... 7

D.  The Plaintiff Encountered This Violation and Is Being Deterred From Patronage................................................................. 11

V.  THE LACK OF COMPLIANT PARKING IS UNLAWFUL UNDER CALIFORNIA LAW........................................................... 11

VI.   REMEDIES.............................................................................. 12

VII.  CONCLUSION ........................................................................ 13

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*

4

    603 F.3d 666 (9th Cir. 2010) .................................................. 5

5

*Celotex Corp. v. Catrett*

6

    477 U.S. 317 (1986) ............................................................... 3

7

*Chapman v. Pier 1 Imports (U.S.) Inc.*

8

    631 F.3d 939 (9th Cir. 2011) ........................................... 4, 7

9

*Cullen v. Netflix, Inc.,*

10

    880 F.Supp.2d 1017 (N.D. Cal. 2012) .............................. 11

11

*D'Lil v. Best Western Encina Lodge & Suites,*

12

    538 F.3d 1031 (9th Cir. 2008) .......................................... 12

13

*Doran v. 7-Eleven, Inc.,*

14

    524 F.3d 1034 (9th Cir. 2008) .......................................... 11

15

*Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D.

16

    Cal. 2011)............................................................................. 9

17

*Moeller v. Taco Bell Corp.*

18

    816 F.Supp.2d 831 (N.D. Cal. 2011) .................................. 5

19

*Molski v. M.J. Cable, Inc.,*

20

    481 F.3d 724 (9th Cir. 2007) ...................................... 11, 13

21

*Rush v. Denco Enterprises, Inc.,*

22

    857 F. Supp. 2d 969 (C.D. Cal. 2012) ............................... 7

23

**Statutes**

24

42 U.S.C. § 12102(2)(A) ....................................................... 6

25

42 U.S.C. § 12188(a) ............................................................. 5

26

42 U.S.C. §§ 12183(a)(2) ...................................................... 5

27

Cal. Civ. Code § 55.56(a) ..................................................... 12

28

Cal. Civ. Code § 55.56(b)....................................................................... 12

Cal. Civ. Code § 55.56(e)....................................................................... 12

Civ. Code § 51 (f) .................................................................................. 11

**Other Authorities**

1991 Standards § 4.1.2(5)(b) .................................................................. 8

1991 Standards § 4.6.4 ........................................................................... 8

1991 Standards §§ 4.1.2(7)(a) ............................................................... 8

2010 Standards § 502.2 .......................................................................... 8

28 C.F.R. § 36.211(a) ............................................................................. 9

28 C.F.R. § 36.304(b) ........................................................................... 10

28 C.F.R., Part 36, Appendix C, section 36.211 .................................... 9

28 C.F.R., Part 36, Appendix D

    ("ADAAG") § 4.27 ........................................................................... 7

CBC § 1129B3 ........................................................................................ 8

CBC § 1129B4 ........................................................................................ 8

Department of Justice, Technical Assistance Manual on the American

    with

      Disabilities Act (BNA) §§ III-4.4100 (1991) ...................................... 7

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Mr. Love is paraplegic; he uses a wheelchair for mobility. His activities are limited due to his disability, but he immensely enjoys the independence of traveling, attending various events, and going to restaurants and bars. He does all of these things on his trips around Southern California. Unfortunately, he has had to deal with the stress and frustration of the lack of accessible parking and other features that non-disabled people take for granted.

This occurred during visit to The Mexican Tire Shop ("Store") in Victorville. However, instead of simply being able to park and shop at the Store, Mr. Love once again found himself in the disappointing and frustrating, yet all-too-familiar situation of struggling to find accessible parking, only to realize that he will not be able to park and shop at the Store. A simple thing like parking your car and entering a store is a basic right that was unequivocally denied to Mr. Love, and it was difficult and troublesome for him. Once again, Mr. Love was forced to search for an alternative place to shop because the place he chose did not make itself available to disabled patrons.

Although the law has required these simple accommodations for disabled Americans for 26 years, Samuel Love is continuously confronted with inaccessible bars, restaurants, shops, hotels, and the like. And, he has been vilified for his decision to haul law breaking businesses before courts and tribunals of the state to hold them accountable. In this case, the Defendants' failure to provide van accessible parking and an accessible ramp is illegal and discriminatory under the ADA and has been for 26 years. Because the Store has violated the law and excluded Mr. Love and

1

customers like him for nearly three decades, Mr. Love seeks an Order requiring Defendants, the owners of the property, and the owners of the Store, to provide and maintain accessible parking, as well two statutory penalties of $4,000 each for the barriers Mr. Love personally encountered during his visit.

## II.  RELEVANT FACTS

Mr. Love is a paraplegic who cannot walk and who uses a wheelchair for mobility. (SUF #1). Mr. Love drives a specially equipped van with a ramp that deploys from the passenger side of the van to accommodate his wheelchair. (SUF #2).

The Mexican Tire Shop ("Store") is located at or about 15390 7th Street, Victorville, California. (SUF #3). Defendant Manuel Cardenas is the current owner of the real property located at about 15390 7th Street, Victorville, California, and was in December of 2017. (SUF #4). Defendant Margarita Arriaga is the current owner of the Mexican Tire Shop ("Store") located at about 15390 7th Street, Victorville, California, and was so in December 2017. (SUF #5).

On December 29, 2017, Mr. Love went to the Mexican Tire Shop ("Store") located at or about 15390 7th Street, Victorville, California, to inquire about their products and services. (SUF #3). As Mr. Love drove into the parking lot of the Store, he discovered that there were parking spaces provided for customers, one of which was reserved for persons with disabilities. (SUF #6).  The surface of the reserved parking space had deteriorated with broken pieces of asphalt. (SUF #7). The reserved parking space and access aisle were too narrow for him to be able to park his vehicle.  (SUF #8). The outline of the reserved parking space had faded.   (SUF #9). Apart from the wall mounted signage indicating

2

accessibility, there was no other signage displayed at or near the reserved parking space. (SUF #10). Mr. Love needs a parking space with an access aisle to ensure he has enough room to deploy his ramp. (SUF #11).

Mr. Love needs a parking space with a wider access aisle to ensure he has enough room to get in and out of my vehicle. He was anxious to park in the parking lot of the Store because he was afraid that another car would park next to him, preventing him from re-entering his vehicle. (SUF #12). He has faced this problem many times in the past when he has parked in a parking space that did not have an access aisle, and then was trapped out of his vehicle when another car parked next to him. (SUF #13). He also needs a space with the proper signage and markings so that it is clear to non-disabled patrons that it is only for disabled persons to use. (SUF #14). Due to the lack of a disabled parking space with an access aisle, he was deterred from attempting further patronage and he left the property. (SUF #15). This caused Mr. Love difficulty, discomfort and frustration.

Mr. Louis was given the assignment of going to the Mexican Tire Shop ("Store") located at or about 15390 7th Street, Victorville, California, and taking photographs and measurements of the parking and the path of travel leading to the Store. (SUF 17). On January 22, 2018, Mr. Louis conducted his investigation of the Store. (SUF 18). Mr. Louis found that the off-street parking lot serving the Store offered approximately 4 parking spaces to its customers, one of which was reserved for persons with disabilities. (SUF 19). The reserved parking space measured 96 inches in width. (SUF 20). The access aisle measured just 28 inches in width. (SUF 21). The surface of the reserved parking space had deteriorated with broken pieces of asphalt. (SUF 22). The outline of the reserved parking space had faded. (SUF 23). Apart from the pole mounted signage indicating accessibility, there was no other signage displayed at

or near the reserved parking space. (SUF 24). Additionally, the ramp that leads to the entrance of the Store is too steep and had a slope of 16.9% gradient. (SUF 25). Mr. Louis personally took all his measurements with a measuring tape and slope gauge. (SUF 26). Mr. Love lives in Beaumont, CA, and this Mexican Tire Shop is just a few miles from his home. The Store is therefore a convenient place for him to shop whenever he is in the area. (SUF 27). Mr. Love would like the ability to safely and independently park and access the Store. (SUF 28). Once the violations are removed, he plans to visit the Store on a regular basis whenever he is in the area. (SUF 29).

## III.  THE LACK OF ACCESSIBLE PARKING

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of

4

places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);

2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;

3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;

4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);

5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Mr. Love's civil rights were violated because the Defendants failed to provide accessible parking and an accessible ramp at their Store. Plaintiff will discuss each element, seriatim.

### A.     Plaintiff is Disabled

Mr. Love is a man with severe mobility impairments who cannot walk and uses a wheelchair for mobility. (SUF #1). There can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability).  Given Mr. Love's inability to walk, this is not a genuine issue.

### B.     Defendants Own and Operate a Place of Public Accommodation

The Store is a sales establishment. Sales establishments are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7)(E); The Defendants owned and operated this place of public accommodation during Mr. Love's visit. (SUF #4 & 5). The Defendants, therefore, had an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

### C.      The Store Had Barriers That Were Readily Removed

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991).

Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

The lack of accessible parking constitutes a barrier. Under the 1991 Standards, any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. 1991

Standards § 4.1.2(5)[1]. One in every eight of those accessible parking spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible parking spaces, but not less than one, must be "van" accessible, i.e. having an eight foot access aisle, or alternatively, having a stall measuring 132 inches in width with a 60 inch adjacent access aisle. 2010 Standards § 502.2.[2] Further, to be compliant, "[a]ccessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility. [Van-accessible spaces] shall have an additional sign 'Van-Accessible' mounted below the symbol of accessibility. Such signs shall be located so they cannot be obscured by a vehicle parked in the space." 1991 Standards § 4.6.4.

Furthermore, all accessible parking spaces must be outlined in blue and display the international symbol of accessibility. CBC § 1129B4; 1991 Standards §§ 4.1.2(7)(a), 4.30.7. "The words "NO PARKING" shall be painted on the ground within each 8-foot… loading and unloading

---

[1] The 1991 Standards are found at 28 C.F.R., Part 36, Appendix "D" and the 2010 Standards are found at 36 C.F.R., Part 1191, Appendices "B" and "D." The correct title of the 1991 Standards is "1991 Standards for Accessible Design." However, in the earliest published decisions, courts and practitioners mistakenly referred to these Standards as the Americans with Disabilities Act Accessibility Guidelines (ADAAG), perhaps not understanding that the ADAAG promulgated by the Access Board were not the enforceable Standards but merely guidelines or recommendations made to the Department of Justice. When the DOJ adopted them, they were renamed as Standards in the Federal Register. But the original name stuck.

[2] The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010 Standards govern in this case, but not both simultaneously. However, both Standards are cited to demonstrate that it does not matter which Standard is applied because the parking did not comply with either Standard.

access aisle. This notice shall be painted in white letters no less than 12 inches… high and located so that it is visible to traffic enforcement officials." CBC § 1129B3.

Ramps with elevation changes greater than 6 inches cannot be steeper than 8.33%. 1991 Standards § 4.8.2; 2010 Standards § 405.2. However, at existing facilities, short ramps can vary a bit. A ramp that rises no more than 3 inches can have a slope as steep—but no more steep—than 12.5%. 1991 Standards § 4.1.6(3)(a)(ii); 2010 Standards § 405.2. A ramp that rises between 3 and 6 inches can have a slope as steep, but no more steep, than 10%. 1991 Standards § 4.1.6(3)(a)(i); 2010 Standards § 405.2. Here, the ramp that leads to the entrance of the Store is has a slope of 16.9% gradient. (SUF 25).  The ramp slope does not comply with the law.

Moreover, the ADA not only requires that businesses provide accessible facilities, i.e. facilities that physically comply with the Access Standards, but they have an ongoing duty to ensure that those accessible features remain ready to be used by persons with disabilities: "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily achievable to and usable by persons with disabilities . . .." 28 C.F.R. § 36.211(a). The Department of Justice explains the purpose of this Regulation:

Section 36.211 Maintenance of Accessible Features

Section 36.211 provides that a public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. The Act requires that, to the maximum extent feasible, facilities must be accessible to, and usable by, individuals with disabilities. This section recognizes that it is not sufficient to provide features such as accessible routes, elevators or ramps, **if those features are not maintained in**

**a manner that enables individuals with disabilities to use them.**

28 C.F.R., Part 36, Appendix C, § 36.211 (emphasis added). "A violation of the ADA can occur where a defendant's business is in compliance with ADAAG requirements, but that defendant does not maintain its compliant features in a useable manner." *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal. 2011). One must remember that the issues raised in this case are not just building or access code issues but civil rights issues. In other words, it is not enough that the required handicap parking exists if it is unusable, lacks an access aisle and proper signage. A property owner cannot point proudly to striped accessible parking if he fails to maintain that parking, as Defendants failed to do so in this case.

In the present case, when Mr. Love attempted to park in December 2017, there was no compliant accessible parking provided. None of the required standards listed above were met. Mr. Louis's investigation demonstrates that the handicap parking space is still not compliant, that it still lacks an access aisle, and that the steps to the shop are still not ramped. (SUF #19-25).

Providing and maintaining accessible parking and installing ramps for the disabled are readily achievable actions. A cursory review of the Code of Federal Regulations indicates that these types of action, i.e., providing accessible parking and installing a ramp, is of the type of action that is identified as likely to be readily achievable. See 28 C.F.R. § 36.304(b)(1) & (18).

In sum, the Defendants failed to remove barriers that were readily achievably removed and, therefore, violated the Plaintiff's rights under the ADA.

### D. The Plaintiff Encountered This Violation and Is Being Deterred From Patronage

Not only did Mr. Love personally encounter this violation, but he faces the threat of continued and repeated violations. As established above, Defendants failed to provide complaint accessible parking and path of travel on the date of Mr. Love's visit. As of January 22, 2018, the date of Plaintiff's investigator's investigation, the parking is still not compliant nor have the steps been ramped. This failure to maintain the parking and path of travel demonstrates an apathy or an ignorance about compliance. Defendants should not only be required to provide accessible parking, they should also be required to implement a policy and procedure to maintain the parking. Until then, plaintiff will continue to be aggrieved by the likelihood of the recurring parking barrier.

In sum, there has been a violation of the American with Disabilities Act.

## IV.   THE LACK OF COMPLIANT PARKING IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f). "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed above under section "IV", the defendants violated the ADA. Thus, there has been a per-se violation of Unruh.

# V.  REMEDIES

The Plaintiff seeks both injunctive relief and statutory damages. Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. § 12188(a). Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2). "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

Here, Mr. Love travels to Victorville often, as he lives in Beaumont. The Store is therefore a convenient place for him to shop. (SUF #27). He would like the ability to safely and independently access the Store. (SUF #28). Therefore, he has standing to seek the fix.

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. § 55.56(a). A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b). Under the Civil Code, the plaintiff is entitled to recover a statutory penalty for "each offense" (Cal. Civ. Code § 52(a)) which has been defined as "each particular occasion that the plaintiff was denied full and equal access . . .." Cal. Civ.

12

Code § 55.56(e). A plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. § 55.56(b).

Here, Mr. Love personally encountered the access standards violations on his December 2017 visit, and has since been deterred from visiting due to his knowledge of the barriers. Therefore, Mr. Love seeks two statutory penalties: one for his encounter; one for his deterrence. There are no genuine issues in dispute here and the Plaintiff is entitled to the statutory award of $8,000 under the Unruh Civil Rights Act for each of his encounters and a deterrence. "The litigant need not prove she suffered actual damages to recover the independent statutory damages..." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Plaintiff seeks an award of $8,000.

## VI.   CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.


Dated: October 13, 2018          CENTER FOR DISABILITY ACCESS


By: */s/ Sara N. Gunderson*
Sara Gunderson
Attorneys for Plaintiff