UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>            Plaintiff,<br><br>      v.<br><br>RIVENDELL II, LTD. - L.P., et al.,<br><br>            Defendants. | Case No.18-cv-03907-EDL<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 20 |

Before the Court is Plaintiff Samuel Love's motion for default judgment against Defendants Rivendell II, Ltd.-L.P. and Belthil Corporation ("Defendants"). Defendants have not opposed or otherwise responded to Plaintiffs' motion. Because the Court lacks consent from all parties, it issues this report and recommendation to GRANT Plaintiff's motion for default judgment, award $4,000 in statutory damages and $6,267 in attorneys' fees and costs, and enter Plaintiff's proposed injunctive relief that Defendants provide compliant accessible parking spaces at the property located at or about 980 South Claremont Street, San Mateo, California, in compliance with the 2010 ADA Standards for Accessible Design. The Court directs the Clerk to reassign this case to a District Judge.

## I.    FACTUAL BACKGROUND

Plaintiff is a paraplegic who uses a wheelchair for mobility because he is substantially limited in his ability to walk. Compl., ¶ 1; Love Decl., ¶ 2. Plaintiff drives a specially equipped and modified van with a deployable ramp so that he can wheel in and out of his vehicle. Love Decl., ¶ 3. Defendants own property in San Mateo, California where Ma's Auto Repair is located. Compl., ¶¶ 2-3. Plaintiff visited Ma's Auto Repair in on May 30, 2018 to have the brakes on his vehicle checked. Id., ¶ 8; Love Decl., ¶ 5. Plaintiff found that Ma's Auto Repair provides parking space but that none of the spaces were reserved for individuals with disabilities. Compl., ¶¶ 10-

11; Love Decl., ¶¶ 6-7. Because of the lack of accessible parking, Plaintiff left Ma's Auto Repair without attempting to have his brakes inspected. Love Decl., ¶ 8. Plaintiff plans to return and patronize Ma's Auto Repair but is deterred to do so because of the lack of accessible parking. Compl., ¶ 17; Love Decl., ¶ 9.

## II. PROCEDURAL HISTORY

On June 29, 2018, Plaintiff filed his complaint for damages and injunctive relief under the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act ("Unruh Act"). Defendants were served on July 19, 2018. Neither Defendant answered the complaint, and the Clerk entered default against Defendants on September 6, 2018.

After entry of default, Plaintiff took no further action. On January 15, 2019, the Court issued an order to show cause why the case should not be dismissed for failure to prosecute. Plaintiff responded to the order to show cause by filing his motion for default judgment.

## III. LEGAL STANDARD

After entry of a default by the clerk, a court may grant a default judgment. See Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). As a preliminary matter, the court must determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). In addition, "the Court must assess the adequacy of the service of process on the party against whom default judgment is requested." Disney Enterprises, Inc. v. Vuong Tran, 2013 WL 1832563, at *1 (N.D. Cal. May 1, 2013). If the Court determines that service was sufficient, it should consider whether the following factors support the entry of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the above factors, the Court takes all factual allegations in Plaintiff's

United States District Court
Northern District of California

2

complaint as true, except for those relating to damages.  See TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  Relief granted under a default judgment is limited by Federal Rule of Civil Procedure 54(c), in that the judgment "shall not be different in kind of exceed in amount that prayed for in the [complaint]."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

## IV.    DISCUSSION

### A.    Jurisdiction

Before entering default judgment, a court has "an affirmative duty to look into its jurisdiction" over the subject matter of the action and the parties involved.  Tuli, 172 F.3d at 712. The Court has subject matter jurisdiction over this action because Plaintiff has asserted claims under the ADA, a federal statute.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The Court also has supplemental jurisdiction over the state law Unruh Act claim because that claim arises out of the same case or controversy as the ADA claim.  28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").  The Court also has personal jurisdiction as Defendants own property in the state of California where the accessibility barriers are present.

### B.    Procedural Requirements

Once a defendant has been found in default, a court may enter default judgment against it. Fed. R. Civ. P. 55(b)(2).  Before a court may consider whether to enter default judgment, it must be satisfied that the procedural prerequisites, including adequate service of process, have been met.  See, e.g., PepsiCo, 238 F. Supp. 2d at 1175.  Further, a court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1).

Plaintiff served each Defendant's agent for service of process on July 19, 2018.  Dkt. Nos. 8-9.  This service is sufficient for a corporation or partnership.  Fed. R. Civ. P. 4(h)(1)(B).    The

3

Clerk entered default against each Defendant. Dkt. Nos. 13-14. Plaintiff then filed its motion for default judgment and has provided evidence that he served the motion on Defendants by mail on January 25, 2019. Dkt. No. 20-8 (certificate of service). Defendants are neither unrepresented minors, incompetent persons, nor persons in military service. Therefore, Defendants are on notice of this lawsuit and Plaintiff's motion for default judgment.

### C.    Eitel Factors

#### 1.    Prejudice to Plaintiff

The first <u>Eitel</u> factor is whether Plaintiff will suffer prejudice if default judgment is not entered. Without default judgment, Plaintiff will be without a remedy for Defendants' alleged violations the ADA and the Unruh Act. See <u>PepsiCo.</u>, 238 F. supp. 2d at 1177 ("Potential prejudice to Plaintiffs favor granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."); <u>Juno Therapeutics</u>, 2018 WL 2021483, at *4 ("Because Plaintiffs have no recourse for injunction if default judgment is not entered, this factor weighs in favor of default judgment."). This factor weighs in favor of granting Plaintiff's motion for default judgment.

#### 2.    Merits and Sufficiency of the Complaint

Under the second and third <u>Eitel</u> factors, the court considers the merits and sufficiency of Plaintiff's complaint, specifically whether Plaintiff's complaint "state[s] a claim on which [it] may recover." <u>Pepsico</u>, 238 F. Supp. 2d at 1175; <u>Chanel, Inc. v. Hsiao Yin Fu</u>, 2017 WL 1079544, at *3 (N.D. Cal. Mar. 22, 2017) ("Generally, courts consider the merits of plaintiff's substantive claims and the sufficiency of the complaint together.").

##### a.    ADA

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public

United States District Court
Northern District of California

United States District Court
Northern District of California

1    accommodation; and (3) the plaintiff was denied public accommodations by the defendant because

2    of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).

3               **i.      Whether Plaintiff is Disabled**

4          The ADA defines the term "disability" to mean "a physical or mental impairment that

5    substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).

6    "Major life activities" include, among other things, walking. 42 U.S.C. § 12102(2)(A). Plaintiff

7    is a paraplegic who is substantially limited in his ability to walk, and uses a wheelchair for

8    mobility. This satisfies the first element of Plaintiff's ADA claim.

9               **ii.     Whether Ma's Auto Repair is a Place of Public
10                    Accommodation**

11         The ADA expressly provides that "private entities are considered public

12   accommodations . . . if the operations of such entities affect commerce." 42 U.S.C. § 12181(7).

13   The definition of public accommodation includes "a bakery, grocery store, clothing store,

14   hardware store, shopping center, or other sales or rental establishment." Id., § 12181(7)(F). Ma's

15   Auto Repair, a car repair shop, falls within that definition, and Plaintiff alleges that Defendants

16   own the property. Accordingly, the second element of Plaintiff's ADA claim is fulfilled.

17              **iii.    Whether Ma's Auto Repair is Readily Accessible and
                     Usable by Individuals with Disabilities**

18         The standard for determining whether a facility is readily accessible and usable by an

19   individual with a disability depends on whether the facility is an existing facility or new

20   construction. For facilities that were constructed after the passage of the ADA, the accessibility

21   guidelines generally govern this question. See 28 C.F.R. § 36.406, Appendix to subpart (a)

22   (federal regulation requiring that all facilities built for first occupancy after January 26, 1993 must

23   comply with the ADA Accessibility Standards). For existing facilities, the ADA provides that

24   discrimination arises from the "failure to remove architectural barriers . . . where such removal is

25   readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Readily achievable means "easily

26   accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. §

27   12181(9); Molski, 481 F.3d at 730.

28         Plaintiff argues that Defendants discriminated against him and violated the ADA because

they failed to comply with either the 1991 or 2010 Accessibility Standards, which require that a business that provides parking spaces must provide accessible parking spaces that meet specifications such as the ratio between accessible and non-accessible spaces. See 1991 Standards § 4.1.2(5); 2010 Standards § 208. However, these standards only apply to facilities that were newly constructed after 1993 and Plaintiff has not provided any evidence of when this facility was constructed.

Thus, it is necessary to consider the more general question of whether Defendants' lack of accessible parking is a "failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Under 28 C.F.R. § 36.304(b), examples of readily achievable steps to remove barriers include installing ramps, insulating lavatory pipes under sinks to prevent burns, repositioning the paper towel dispenser and other dispensers, installing accessible door hardware, and creating designated accessible parking spaces.

The parking barrier alleged in Plaintiff's complaint falls within the express scope of this statutory provision and Plaintiff's complaint alleges that the barrier is "easily removed without much difficult or expense." Compl., ¶ 19. He further alleges that Defendants previously had an accessible parking space marked and reserved for persons with disabilities, but that the parking space was allowed to fade or get paved over. Id., ¶ 13. Finally, he alleges that he personally encountered the barrier during his visit to Ma's Auto Repair in May 2018. Id., ¶¶ 8, 15. These allegations are sufficient to satisfy the third element of an ADA claim.

**b.    Unruh Act**

The Unruh Act broadly outlaws arbitrary discrimination in public accommodations, including discrimination based on disability. Cal. Civ. Code § 51(b); Jankey v. Sung Koo Lee, 55 Cal. 4th 1038, 1044 (2012). In the disability context, the Unruh Act operates virtually identically to the ADA. Molski, 481 F.3d at 731. Any violation of the ADA necessarily constitutes a violation of the Unruh Act. Id. (citing Cal. Civ. Code § 51(f)). Where the basis of liability for an Unruh Act violation is an ADA violation, plaintiff need not prove intentional discrimination. Munson v. Del Taco, Inc., 46 Cal. 4th 661, 678 (2009). The Unruh Act allows for monetary damages including automatic minimum penalties in the amount of $4,000 and attorneys' fees as

United States District Court
Northern District of California

6

"may be determined by the court." Cal. Civ. Code § 52. Proof of actual damages is not required to recover statutory minimum damages under the Unruh Act. Botosan v. Paul McNally Realty, 216 F.3d 827, 835 (9th Cir. 2000).

Since Plaintiff has demonstrated the sufficiency of his complaint on the ADA claim, he has also made out an Unruh Act claim for disability discrimination. Accordingly, the second and third Eitel factors are satisfied for the ADA and Unruh Act claims.

### 3. Amount of Money at Stake

Under the fourth Eitel factor, the court should consider "the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, 238 F. Supp. 2d at 1176. A large amount of claimed damages weighs against an entry of default judgment. Eitel, 782 F.2d at 1472. To determine if an amount is reasonable, the court considers the plaintiff's "declarations, calculations, and other documentation of damages." Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Plaintiff seeks an injunction, $4,000 in Unruh Act statutory damages, and $6,513 for the attorneys' fees and costs he has incurred in this case. This is a total of $10,513 and is not unreasonable. See Heifetz v. Breed Props., 2017 WL 713303, at *3 (N.D. Cal. Feb. 23, 2017 ) (a total sum of $12,690.50, which included attorneys' fees and costs, was not unreasonable and weighed in favor of default judgment in ADA and Unruh Act case regarding the weight and closure speed of the entrance door, difficulty navigating through the path of travel, and trouble with the restroom door and lack of braille signage).

### 4. Likelihood of Dispute Over Material Facts

The fifth Eitel factor asks the court to consider the likelihood of a dispute regarding the material facts. Where a defendant "has not appeared at all . . . the absence of the possibility of a dispute concerning material facts is often easier to infer." Solaria Corp. v. T.S. Energie e Risorse, S.R.I., 2014 WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014) (citing Ploom, Inc. v. Iploom, LLC, 2014 WL 1942218, at *2 (N.D. Cal. May 12, 2014)). "[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge

United States District Court
Northern District of California

7

the Complaint or otherwise appear in this case." <u>W. Reserve Life Assur. Co. of Ohio v. Canul</u>,

2012 WL 844589, at *3 (E.D. Cal. Mar. 12, 2012). Accordingly, this factor weighs in favor of

default judgment.

### 5. Excusable Neglect

The sixth <u>Eitel</u> factor asks the court to consider whether a defendant's default resulted from

excusable neglect. <u>Eitel</u>, 782 F.2d at 1472. "Where a defendant '[was] properly served with the

Complaint, the notice of entry of default, as well as the papers in support of the instant motion,'

this factor favors entry of default judgment." <u>Pearson v. Nationstar Mortgage, LLC</u>, 2016 WL

5496268, at *6 (C.D. Cal. Sept. 26, 2016) (quoting <u>Shanghai Automation Instrument Co. Ltd. v.</u>

<u>Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001)). Defendants were properly served and have

still not appeared in this case. Accordingly, there is no evidence of excusable neglect.

### 6. Policy Favoring Decision on the Merits

Although courts prefer to issue judgments on the merits, a defendant's failure to answer a

complaint "makes a decision on the merits impractical, if not impossible." <u>PepsiCo</u>, 238 F. Supp.

2d at 1177. Termination of a case before hearing the merits is allowed when a defendant fails to

defend an action. <u>Id.</u> This factor is neutral or weighs in favor of entering default judgment against

Defendants.

In conclusion, all of the <u>Eitel</u> factors taken together weigh in favor of entering default

judgment against Defendants.

### D. Remedies

#### 1. Injunctive Relief

Plaintiff seeks an injunction requiring Defendants to "provide compliant accessible parking

spaces at the property located at or about 980 South Claremont Street, San Mateo, California, in

compliance with the 2010 ADA Standards for Accessible Design." Dkt. No. 20-3 (proposed

order). Under the regulation governing alterations of public accommodations and commercial

facilities, an alteration commencing after January 26, 1992 "shall be made so as to ensure that, to

the maximum extent feasible, the altered portions of the facility are readily accessible to and

usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. §

36.402(a)(1). Whether the 1991 or 2010 Standards apply to this type of alteration depends on when the facility last acquired a building permit or, if no permit is needed, when the alterations occur. 28 C.F.R. § 36.406. It is unknown whether a building permit would be necessary to make changes to the parking lot, but if so the building permit would need to be obtained "on or after March 15, 2012," and if not the alteration would still start after that date. So either way Defendant would need to comply with the 2010 Standards. 28 C.F.R. § 36.406(a)(3). Thus, the applicable regulations would require Defendants to modify the parking lot under the 2010 Standards in order to be in compliance with the ADA. The Court recommends entering Plaintiff's proposed injunction.

### 2. Statutory Damages

As noted above, Plaintiff seeks statutory damages of $4,000 for Defendants' violation of the Unruh Act. Under the Unruh Act, a prevailing plaintiff is entitled to damages of "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." Cal. Civ. Code § 52. Here, Plaintiff seeks the minimum award of damages for his one visit to Ma's Auto Repair. The Court recommends awarding $4,000 to Plaintiff.

### 3. Attorneys' Fees & Costs

Plaintiff also asks the Court to enter an award of attorneys' fees and costs in the amount of $5,793 in attorneys' fees and $720 in costs for a total of $6,513. The Court may, in its discretion, award attorneys' fees and litigation costs to the prevailing party in a discrimination case. 42 U.S.C. § 12205.

Plaintiff's request for fees represents 10.5 hours of attorney work. See Price Supp. Decl., Billing Statement. The 10.5 hours were worked by seven different attorneys during the initial investigation of the allegations, drafting the complaint, pursuing default against Defendants, and preparing the motion for default judgment. None of these hours are duplicative or excessive. The number of hours worked on this case is reasonable.

Each of the seven attorneys who worked on Plaintiff's case seek an hourly rate of either $410 or $650. Attorneys Mark Potter, Russell Handy, and Phyl Grace each request $650 per hour for their work. Price Decl., ¶¶ 10-12. Mr. Potter has spent the majority of his 25-year career

9

United States District Court
Northern District of California

litigating 2,000 disability cases.  <u>Id.</u>, ¶ 10.  He regularly teaches seminars and publishes articles on the ADA and has served on Californians for Disability Rights, Chapter Number One and Southern California Rehabilitation Services.  <u>Id.</u>  Mr. Handy has 20 years of experience in disability litigation, prosecuting over 1,000 ADA cases and 40 ADA trials and arguing disability appeals on the state and federal level.  <u>Id.</u>, ¶ 11.  He was awarded California Magazine's Attorney of the Year award in 2010 for his disability work that resulted in the <u>Munson v. Del Taco, Inc.</u>, 46 Cal. 4th 66 (2009) ruling from the California Supreme Court.  <u>Id.</u>  Ms. Grace has nearly 24 years of litigation experience and has spent the last 10 years exclusively handling all aspects of disability access litigation.  <u>Id.</u>, ¶ 12.  Three of the remaining attorneys – Christina Carson, Dennis Price, Farrell Goodman – seek an hourly rate of $410.  <u>Id.</u>, ¶¶ 13-15.  Ms. Carson is a 2011 graduate of California Western School of Law who has handled disability cases for over six years.  <u>Id.</u>, ¶ 13.  Mr. Price graduated from Loyola Law School in 2011, after which he worked for a public interest law firm representing senior citizens and then moved on to litigate over 500 ADA cases in both state and federal court.  <u>Id.</u>, ¶ 14.  Mr. Goodman in a 1985 graduate of Pepperdine Law School.  <u>Id.</u>, ¶ 15.  Over his career, Mr. Goodman has litigated personal injury, product liability, and Social Security cases, although his practice now focuses on representing plaintiffs in disability discrimination matters.  <u>Id.</u>, ¶ 15.  Plaintiff did not provide information about the qualifications and experience of the seventh attorney, Amanda Seabock, who billed at a rate of $410 per hour.

These requested rates are consistent with hourly rates that have been approved for attorneys with similar experience and qualifications in this District in ADA cases.  <u>See</u> <u>Rodriguez v. Barrita</u>, 53 F. Supp. 3d 1268, 1278-79 (N.D. Cal. 2014) (approving $425 hourly rate of attorney with five years of disability litigation experience and $550 hourly rate for an attorney with over two decades of litigation experience); <u>Civil Rights Educ. & Enforcement Ctr. v. Ashford Hospitality Trust, Inc.</u>, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (approving hourly rate of $900 for 1974 law school graduate who previously asserted as Assistant U.S. Attorney General for Civil Rights and has litigated antidiscrimination cases for 40 hours, $750 for a 1991 law school graduate who is considered a leading disability rights class action practitioner, and $500 for a 2007 law school graduate who litigates civil rights class actions and impact litigation); <u>Elder v.</u>

United States District Court
Northern District of California

10

1    Nat'l Conf. of Bar Examiners, 2011 WL 4079623, at *4 n.4 (N.D. Cal. Sept. 12, 2011) (approving

2    rate of $730 per hour and $760 per hour for attorneys with approximately three decades of civil

3    rights litigation experience, $535 per hour for an attorney with 8 years of civil rights work, and

4    $350 per hour for an attorney with 4 years of experience).  However, Plaintiff did not provide

5    justification for the $410 hourly rate sought for attorney Amanda Seabock's 0.6 hours of work on

6    Plaintiff's response to the Court's January 15, 2019 order to show cause.  At the hearing, Plaintiff

7    withdrew its request for fees associated with Ms. Seabock's work.  Accordingly, the Court

8    recommends granting Plaintiff's request for attorneys' fees, minus the $246 for Ms. Seabock's

9    time, for a total of $5,547.

10          Finally, Plaintiff seeks an award of costs of $720: $200 for an investigator, $400 filing

11   fees, and $120 service fees.  See Rodriguez v. Barrita, Inc., 53 F. Supp. 3d 1268, 1295 (N.D. Cal.

12   2014) (awarding costs for an investigator to perform site surveillance and conduct criminal history

13   research in ADA case); Cruz v. Starbucks Corp., 2013 WL 2447862, at *10 (N.D. Cal. 2013)

14   (awarding costs for filing and service of process fees).  These costs are reasonable.  The Court

15   recommends granting Plaintiff's full request of $720.

16   **V.     CONCLUSION**

17          For the reasons discussed above, the Court recommends granting Plaintiff's motion for

18   default judgment, awarding $4,000 in statutory damages and $6,267 in attorneys' fees and costs,

19   and entering Plaintiff's proposed injunctive relief that Defendants provide compliant accessible

20   parking spaces at the property located at or about 980 South Claremont Street, San Mateo,

21   California, in compliance with the 2010 ADA Standards for Accessible Design.

22          Any party may serve and file specific written objections to this recommendation within

23   fourteen (14) days after being served with a copy.  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.

24   72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the

25   right to appeal the District Court's order.

26   Dated: March 11, 2019

27

28                                              _Elizabeth D. Laporte_
                                                ELIZABETH D. LAPORTE
                                                United States Magistrate Judge

United States District Court
Northern District of California

11