| | |
|---|---|
| *Sandy Keaton,* | Judge Mary Strobel |
| | Hearing: March 19, 2019 |
| *v.* | |
| *Los Angeles Unified School District, et al.* | |
| BS165965 | Tentative Decision on Motion for |
| | Attorney's Fees |

Petitioner Sandy Keaton ("Petitioner") moves for an award of attorney's fees of $138,562 pursuant to CCP section 1021.5 against Respondent Los Angeles Unified School District ("LAUSD" or "Respondent").

## Background

Petitioner was employed as an educational audiologist for LAUSD from approximately February 28, 1983 to November 15, 2014, when she retired from public service. (Pet. Index ("PI") 2.) At all material times, LAUSD has operated a reduced workload leave ("RWL") program for certificated personnel such as Petitioner pursuant to Education Code sections 44922 and 22713. (Ibid.) At all material times, Petitioner and Respondents have contributed to a defined benefit pension account in Petitioner's name managed and held by the California State Teachers' Retirement System. (PI 228 ¶ 11; PI 2 ¶ 3.)

Under successive collective bargaining agreements ("CBAs") that LAUSD concluded with Petitioner's union, certificated employees are eligible for up to four "career increments." (PI 174-175, 206-207, 228.) Pursuant to policy ("RWL Policy"), LAUSD agreed to provide employees "retirement contributions based on the employee's salary that would have been earned if employed on a full time basis." The RWL Policy provides that an employee who is granted RWL "is eligible for schedule advancement but not eligible for step advancement." (PI 211.)

According to the CBA and LAUSD Policy ("Increment Policy"), a "career increment is a salary differential granted to an employee ... for longevity of service." (PI 206.) In order to qualify for a fourth career increment, an employee must have "been paid on the third career increment for five years while meeting step advance requirements." (PI 229, 175, 207.) The policy further states: "Step Advancement is advancement on the salary table for service and is effective at the beginning of an employee's regular annual assignment in accordance with the following: a. The employee was paid for service or leave of absence on the employee's current or higher schedule for the hours corresponding to 130 full-time days during the previous school year...." (PI 206.)

1

Petitioner and LAUSD entered RWL agreements from 2006 to 2012.  From the 2007-2008 school year to the 2011-2012 school year (five school years), Petitioner worked under RWL agreements and worked more than 50% of the hours of a full-time schedule.  (PI 3-4.)  Petitioner earned her first, second, and third career increments before she began her RWL.  (Id. at 3, 265.)

LAUSD denied Petitioner a fourth career increment under the RWL Program and LAUSD Increment Policy because (1) under the RWL Policy, employees such as Petitioner working in the RWL Program are not eligible for "step" advancement; and (2) under the Increment Policy and CBA, Petitioner was not eligible for a fourth career increment because she failed to work at least 1040 hours (the hours corresponding to 130 full-time days) for five schools years by nature of being on a RWL.  (PI 4, ¶ 12.)

In her petition, Petitioner contended that under Education Code sections 44922 and 22731, Respondents have a duty to pay RWL employees "the credible compensation the member would have been paid had the member not reduced his or her workload."  Petitioner contended that Respondents have wrongfully denied her "credible compensation" by denying her a fourth career increment.

## Procedural History

On October 26, 2016, Petitioner filed a verified petition for writ of mandate pursuant to CCP section 1085 and complaint for declaratory relief.

On February 7, 2017, the court overruled Respondents' demurrer to the petition. Respondents thereafter answered the petition.

On March 29, 2018, Petitioner filed her opening brief in support of the petition. On April 27, 2018, Respondents filed their opposition.  On May 14, 2018, Petitioner filed her reply.  The court received Petitioner's index, which includes a joint stipulation of facts.  The court also received Respondents' separate appendix of evidence.

On July 3, 2018, after a hearing, the court granted the petition for writ of mandate and complaint for declaratory relief in favor of Petitioner.  In its decision, the court concluded that "the plain language of sections 44922 and 22713 supports Petitioner's interpretation that LAUSD was required to pay her salary and pension benefits, based on the fourth career increment, that she would have received had she remained a full-time employee."  Alternatively, the court concluded that "the provision in section 44922(c)(1) requiring that an employee on RWL be paid a pro rata share of the **salary** he or she would be earning had he or she not elected to exercise of the option of part-time employment would also dictate that a career increment that would have been earned for full time work should equally apply to an employee on RWL."

On August 14, 2018, the court entered judgment in favor of Petitioner and issued a writ of mandate.  The judgment stated in part:

2

2. That Respondent's unlawful policies caused Petitioner to receive lower wages and a reduced pension benefit than what she was entitled to under sections 22713 and 44922 of the Education Code.

3. That a peremptory writ of mandate issue commanding Respondent to withdraw their unlawful policies as to Petitioner and make Petitioner whole…[¶¶].

On October 23, 2018, LAUSD filed its notice of compliance with preemptory writ. LAUSD indicated that it issued a check to Petitioner in the amount of $1,140.71 for "the pay difference for all pay periods after October 26, 2013 until Petitioner's retirement had she been granted a fourth career increment before the 2012-2013 school year." LAUSD also indicated that it had revised its Policy Guide, Certificated Reduced Workload Leave (District Policy "L 14" or RWL Policy). A comparison to the old RWL Policy shows that LAUSD eliminated the phrase "or career increment" from section 5.d, so that section 5.d no longer excludes time on reduced workload leave from the accrual of career increments. (See Regullano Decl. ¶ 6; Pet. Exh. B.)

On November 19, 2018, Petitioner filed her motion for attorney's fees. On March 6, 2019, LAUSD filed its opposition.

## ANALYSIS

### CCP Section 1021.5

An award of attorney fees is appropriate "to a successful party … in any action which has resulted in the enforcement of an important right affecting the public interest." (CCP § 1021.5.) The three factors necessary to support an award of attorney fees to a successful party pursuant to section 1021.5 are: "(1) [the] action has resulted in the enforcement of an important right affecting the public interest,' (2) a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." (*In re Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)

Successful Party

Petitioner was a successful party in this action as the court granted the petition and issued the writ requested by Petitioner.

Enforcement of Important Right Affecting the Public Interest

"The first prong of the section 1021.5 test … requires a determination of 'the 'strength' or 'societal importance' of the right involved. That right may be constitutional or statutory, but it must be 'an important right affecting the public interest'—it 'cannot involve trivial or peripheral public policies.' Where, as here, the right vindicated is conferred by statute, 'courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals.'"

(*Roybal v. Governing Bd. of Salinas City Elementary School Dist.* (2008) 159 Cal.App.4th 1143, 1148.)

The writ petition enforced important rights affecting the public interest in Education Code sections 44922 and 22731. In its decision, the court noted evidence that "the legislature intended [in the RWL Statutes] to incentivize older teachers to transition to retirement by providing them the same benefits they would have received had they continued to work full-time." The writ petition enforced a mandatory duty in the RWL Statutes – payment of salary and pension benefits for "career increments" as if RWL employees remained in full-time employment -- intended to help longtime teachers phase into retirement while on reduced workload leave.

While LAUSD states that "the public right is miniscule," LAUSD does not appear to dispute the importance of the policy goal, discussed above, that is inherent in the RWL Statutes. (Oppo. 5-6.) The court analyzes below the separate issue of whether the action conferred a significant public benefit on the general public or a large class of persons.

The court concludes that this writ action enforced an important right affecting the public interest.

Significant Public Benefit Conferred on General Public or a Large Class of Persons

To obtain an award under Code of Civil Procedure section 1021.5, a party must also show that its action conferred a significant public benefit on the general public or on a large class of persons. A significant benefit may be pecuniary or non-pecuniary and need not be concrete to support a fee award. (*Braude v. Automobile Club of Southern California* (1986) 178 Cal.App.3d 994, 1013.)

"The trial court determines the significance of the benefit, and the group receiving it, 'from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case. The courts are not required to narrowly construe the significant benefit factor. 'The 'extent of the public benefit need not be great to justify an attorney fee[s] award.' And fees may not be denied merely because the primary effect of the litigation was to benefit the individual rather than the public." (*Indio Police Command Unit Association v. City of Indio* (2014) 230 Cal.App.4th 521, 543.)

"Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving benefit, from a

4

realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 397, quoting *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 939-940).

In this case, it is undisputed that there approximately 30,000 certificated LAUSD personnel who could potentially at some point in their career utilize the RWL policy/statute.  (See Castro Decl. ¶ 4; see Regullano Decl. ¶ 3.)

To qualify for RWL, LAUSD employees must meet the following requirements: (1) they must be certificated employees; (2) who have reached the age of 55; and (3) who have been employed full time in a position requiring certification for at least 10 years, of which the immediately preceding five years were full-time employment without a break in service.  (Oppo. 6; see § 44922, § 22713, and *UTLA v. LAUSD* (1994) 24 Cal.App.4th 1510, 1513-15.)  Petitioner submits evidence that there are an estimated 5,000 LAUSD teachers over the age of 55 that are subject to LAUSD's RWL Policy, which was revised in response to the writ issued in this case. (Regullano Decl. ¶ 9.)  Petitioner does not indicate how many of these employees had been employed full-time in a certificated position for 10 years, of which the immediately preceding five years were full-time employment without a break in service.

LAUSD contends that, over the past five years, between 45-62 employees district-wide qualified for the RWL program.  (Castro Decl. ¶ 5.)  However, this assertion is based on LAUSD's review of "the number of certificated employees who have sought a reduced workload leave over the past five years."  (Ibid.)  LAUSD's personnel specialist, Karen Castro, identified 7 RWL employees who may be eligible to advance to the next career increment pursuant to the court's writ. (Id. ¶ 6.)  In her declaration, Castro does not specify the total number of employees that sought RWL in the past five years.  Also, she does not clearly show that only 45-62 employees met the eligibility requirements for RWL.  Rather, she only shows that 45-62 of employees that sought RWL "actually qualified for the program."

The court concludes that by enforcing the full intent of sections 44922 and 22731, the writ action conferred a significant public benefit on the general public and a large class of persons.  In its notice of compliance with the writ, LAUSD indicated that it had revised its Policy Guide, Certificated Reduced Workload Leave (District Policy "L 14" or RWL Policy).  A comparison to the old RWL Policy shows that LAUSD eliminated the phrase "or career increment" from section 5.d, so that section 5.d no longer excludes time on reduced workload leave from the accrual of career increments.  (See Regullano Decl. ¶ 6; Pet. Exh. B.)  The new RWL Policy represents a future opportunity for all 30,000 certificated LAUSD employees.  It also represents a present opportunity for all 5,000 teachers over the age of 55 that meet the other eligibility requirements. While the exact number of employees that may meet all eligibility requirements is not shown on this record, the court concludes that the group is sufficiently large to satisfy this element of section 1021.5.  Moreover, the writ petition enforced a right that

potentially benefits all 30,000 LAUSD employees and therefore the general public as well.

The writ action conferred a significant public benefit on the general public and a large class of persons.

Necessity and Financial Burden of Private Enforcement

The necessity and financial burden requirement "'examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys.'" (*Lyons v. Chinese Hosp. Ass'n* (2006) 136 Cal.App.4th 1331, 1348.)  Here, private enforcement was necessary as Petitioner sought writ relief against a public entity.  There is no evidence or argument that public enforcement was available.

A litigant's nonpecuniary interests do not affect its eligibility for section 1021.5 fees under the necessity and financial burden requirement.  (*In re Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217.)  "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.'" (*Woodland Hills Residents' Ass'n, Inc.* (1979) 23 Cal.3d 917, 941.)  "An attorney fee award under section 1021.5 is proper unless the [successful litigant's] reasonably expected financial benefits exceed by a substantial margin the [litigant's] actual litigation costs." (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 154.)  "The successful litigant's reasonably expected financial benefits are determined by discounting the monetary value of the benefits that the successful litigant reasonably expected at the time the vital litigation decisions were made by the probability of success at that time." (Id. at 155.)

Here, Petitioner's financial burden substantially exceeded the financial benefits obtained. LAUSD indicates that it sent Petitioner a check for $1,140.71. At the onset of suit, therefore, her reasonably expected financial benefit was exceeded by the cost of litigation.

**Reasonable Amount of Attorney's Fees**

"The determination of what constitutes a reasonable fee generally 'begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate....' [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award...." (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154.)

Petitioner seeks attorneys' fees for 270.2 hours of work on this matter, at the rate of $550.00 per hour, for a total award of $148,610.

## Hourly Rate

Generally, the reasonable hourly rate used for the lodestar calculation is the rate prevailing in the community for similar work. (*Center for Biological Diversity v. County of San Bernardino*, (2010) 188 Cal.App.4th 603, 616.) In making its calculation, the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases. (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.*, (2016) 6 Cal.App.5th 426, 437.)

Petitioner seeks hourly rates of $600 per hour for Joshua Adams and $370 per hour for Kiel Ireland. These rates are supported by Petitioner's evidence. (Adams Decl. ¶¶2-15, 25-26.) LAUSD has not submitted any evidence that these rates are unreasonable. (*See* Opp. at 7; Bejarano Decl. ¶6.)

## Amount of Time Spent

"The verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396.) If the motion is supported by evidence, the opposing party must respond with specific evidence showing that the fees are unreasonable. (*Premier Med. Mgmt. Sys. v. California Ins. Guarantee Ass'n* (2008) 163 Cal.App.4th 550, 560-63.) The court has discretion to reduce fees that result from inefficient or duplicative use of time. (*Horsford* at 395.)

Petitioner requests 187.4 hours for Joshua Adams and 70.6 hours for Kiel Ireland. The total hours are supported by contemporaneous billing entries. (Adams Decl. ¶22, Ex. 3.) To avoid duplication, Petitioner did not include time spent on this matter by attorneys other than the two main attorneys. (Id., ¶23.) Additional time was also cut. (Id., ¶24.)

LAUSD argues that the number of hours expended is clearly excessive, but does not point to specific time allotments that it contends were unreasonable. (*See* Opp. at 7; Bejarano Decl. ¶6.) In considering an attorneys' fees request, the trial court is in the best position to assess the value of the professional services rendered in the case. (*Ventura v. ABM Industries Inc.*, 212 Cal. App. 4th 258, 275.) This writ petition was tried on the papers in a hearing lasting about less than 15 minutes. There was no discovery motion practice. There was one demurrer, which was overruled. The issue presented in the petition was largely a question of legal interpretation, and not resolution of

disputed facts.  The research of legal issues and writing time required for drafting the petition, opposing the demurrer, and drafting the opening and reply briefs should have substantially overlapped.  The number of hours billed for these tasks does not appear to take that overlap into account.   Under these circumstances, the court finds the 258 hours billed for the case exceeds the number of hours reasonably incurred for the case. The court finds that an award of $98,122.00 fully compensates counsel for the work reasonably performed.

Costs
        Petition submitted a memorandum of costs on August 24, 2018 in the amount $1,071.47. LAUSD did not object.

## Conclusion

The motion is granted. LAUSD is ordered to pay Petitioner the sum of $98,122 as reasonable attorneys' fee and $1,071.47 in costs.