

FILED
CLERK, U.S. DISTRICT COURT
SEP 21, 2016
CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

**United States District Court**
**Central District of California**

| | |
|---|---|
| Trevor Woods et al., <br><br> Plaintiffs, <br><br> v. <br><br> John B. Fagan et al., <br><br> Defendants. | CV 14-8374-VAP (SPx) <br><br> **Order Granting Motion for Attorneys' Fees** <br> **[Doc. No. 158]** |

On July 7, 2016, following a jury trial, this Court entered a Judgment in favor of Plaintiffs Trevor Woods and Tyra Woodson and against Defendants John Fagan and Daniel Martinez. (Doc. No. 154.) On August 3, 2016, Plaintiff filed a Motion for Attorneys' Fees. (Doc. No. 158.) On September 19, 2016, the court held a hearing and the parties submitted on their papers. After considering the papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

On November 19, 2013, Defendants Fagan and Martinez, both of whom are Long Beach Police Department ("LBPD") officers, shot and killed Tyler Woods following a foot pursuit. Woods' parents, Plaintiffs Trevor Woods and Tyra Woodson, filed a complaint under 42 U.S.C. § 1983 alleging Defendants' actions violated their Fourteenth Amendment liberty interest in the companionship and society of their son.

1

The issues of liability and damages were tried to a jury, which returned a special verdict in favor of Plaintiffs on their claims. The parties stipulated to an amount of $10,000.00 in punitive damages if the jury found liability for them. (Doc. No. 154.) The jury returned a special verdict awarding Plaintiffs a total of $1,050,000.00 in compensatory damages (Doc. No. 145).

On July 7, 2016, this Court entered a judgment in Plaintiffs' favor in the sums of $1,050,000.00 in compensatory damages and $10,000.00 in punitive damages. (Doc. No. 154.)

On August 3, 2016, Plaintiff filed a Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988. (Doc. No. 158.) On August 22, 2016, Defendants filed an Opposition. (Doc. No. 165.) On August 29, 2016, Plaintiff filed a Reply. (Doc. No. 170.)

## II.  LEGAL STANDARD

Fees in § 1983 cases are governed by 42 U.S.C. § 1988, which provides:

In any action or proceeding to enforce a provision of section [] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . 42 U.S.C. § 1988(b).

"The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quotation marks omitted). The analysis of attorney's fees is twofold. The Court first must determine whether or not the party seeking fees is the prevailing

2

party.  Fischer v. SJB-P.D., Inc., 214 F.3d 1115 (9th Cir. 2000); Chabner v. United of Omaha Life Ins. Co., 1999 WL 33227443 (N.D. Cal. 1999).  A plaintiff is the prevailing party when the "resolution of the dispute . . . changes the legal relationship between itself and the defendant."  Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).  In other words, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Farrar v. Hobby, 506 U.S. 103, 109 (1992) (internal citation omitted).

### III.  DISCUSSION

Plaintiffs were the prevailing party at trial.  The jury found that Defendants violated Plaintiffs' constitutional rights and awarded them $1,050,000.00 in compensatory damages, and the parties stipulated to $10,000.00 in punitive damages.  Defendants agree Plaintiffs are entitled to reasonable attorneys' fees, but object to the sum sought, $365,275.15, as unreasonable and excessively high.  (Opp. at 1-2.)  Defendants' argument is unpersuasive.

"In determining a reasonable attorney's fee, the district court's first step is to calculate a 'lodestar' by multiplying the number of hours it finds the prevailing party expended on the litigation by a reasonable hourly rate." McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995) (citing Hensley, 461 U.S. at 433). The Court then decides whether to increase or decrease the lodestar amount by evaluating the factors enunciated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976).

The Kerr factors are: time and labor required; the novelty and difficulty of the questions involved; the skill needed to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee, whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorney; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. Id.

Plaintiffs' counsel, Mr. Brian Dunn, seeks $180,404.40 in fees based on an hourly rate of $790 per hour and a total of 228.36 hours; Mr. John Fattahi seeks $119,952.00 based on an hourly rate of $630.00 per hour and a total of 190.40 hours; and Ms. Megan Gyongyos seeks $64,918.75 based on an hourly rate of $425.00 and a total of 152.75 hours. (Mot. at 21.) Plaintiffs' counsel are not seeking an increase from those lodestar amounts based on the Kerr factors.

1. **Reasonable Hourly Rate**

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." Moreno v. City of Sacramento, 534 F.3d 1106, 1114 (9th Cir. 2008). In addition, the court is guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996).

In support of their requested hourly rates, Mr. Dunn, Mr. Fattahi, and Ms. Gyongyos submitted declarations detailing their skills and experience as civil rights attorneys and past fee awards they have received. (See generally Dunn Decl., Fattahi Decl., Gyongyos Decl.) Mr. Dunn, who served as lead counsel for Plaintiffs, specializes in police misconduct civil rights litigation. (Dunn Decl. ¶ 6.) He has been counsel on numerous civil rights cases for over 20 years in which he has obtained substantial verdicts and settlements. (Dunn Decl. ¶¶ 6-8.) Mr. Fattahi has ten years of experience with federal civil rights litigation and has practiced police excessive force litigation almost exclusively for the past seven years. (Fattahi Decl. ¶ 5.) Mr. Fattahi collaborated with Mr. Dunn on nearly all aspects of the trial, including researching applicable law and marshaling evidence, participating in the jury selection, and examining three civilian and six hostile witnesses. (Fattahi Decl. ¶ 3.) Ms. Gyongyos, Mr. Dunn's associate, has more than three years of experience litigating police misconduct cases and had primary responsibility of the day-to-day management of this case since April 2014. (Gyongyos Decl. ¶¶ 3, 5.) Her involvement included drafting Plaintiffs' complaint, propounding written discovery, and preparing numerous pretrial and trial documents. (Gyongyos Decl. ¶ 3.)

Considering the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation, the Court finds a reasonable hourly rate for Mr. Dunn is $750 per hour, for Mr. Fattahi is $550 per hour, and for Ms. Gyongyos is $375 per hour.

The Court notes that Plaintiffs' counsel "served the public interest by vindicating important constitutional rights." McCown v. City of Fontana, 565 F.3d 1097, 1105 (9th Cir. 2008) (citing City of Riverside v. Rivera, 477 U.S. 561, 572

(1986)). Their representation of Plaintiffs was not without risk given, for example, that both Plaintiffs were incarcerated at the time of the trial. Moreover, the hourly rates listed above are in line with the market rates of similarly experienced attorneys in the community (<u>see generally</u> Galipo Decl., Sobel Decl.), and the attorneys in this case are not requesting a fee multiplier.

**2. Reasonable Hours**

The Court has reviewed each and every billing entry in Plaintiffs' fee request, and eliminated the fees requested by Plaintiff for (1) tasks on which excessive time was spent, (2) unnecessary, excessive, or duplicative entries, (3) time charged for clerical or secretarial tasks. The descriptions in the billing entries submitted were satisfactorily detailed, and the Court did not find many instances needing reduction. After reviewing the billing entries, the Court reduced Mr. Dunn's hours by 4.5 hours, Mr. Fattahi's hours by 6.4 hours, and Ms. Gyongyos's hours by 7.48 hours.

Plaintiffs' counsel bears the burden of establishing entitlement to an attorney's fee award and "documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The Court maintains discretion to reduce the number of hours requested where an attorney's block billing makes it difficult to identify whether the hours were reasonably expended. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) ("We do not quarrel with the district court's authority to reduce hours that are billed in block format. The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."); R.S., et al, SACV11-536 AG (RNBx) at 28 (reducing an attorney's "trial preparation" hours by 20 percent based on block billing).

The trial court, due to its familiarity with the case, is in the best position to evaluate the reasonableness of the hours requested. Moreno, 534 F.3d 1106, 1116 (9th Cir. 2008). Here, the Court has reduced the hours of Plaintiffs' counsel where the hours were excessive, duplicative, or charged for clerical or secretarial tasks. For example, the Court deducted 6.2 hours from Mr. Fattahi's multiple logs of "Review

documents and depositions, prepare for trial" because the logs did not identify discrete tasks and the time spent appeared excessive. The Court also deducted the 5.0 hours Ms. Gyongyos logged for assisting in the preparation of Exhibit Binders because that is a clerical task.

In conclusion, the Court sees no reason to depart from the lodestar amount, and the "presumptively reasonable" lodestar amounts for Plaintiffs' counsel are as follows. See Jordan v. Multnomah Cnty., 815 F.2d 1258, 1262 (9th Cir. 1987).

| Attorney/Paralegal | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Dunn | $750 | 223.86 | $167,895.00 |
| Fattahi | $550 | 184.00 | $101,200.00 |
| Gyongyos | $375 | 145.27 | $54,476.25 |
| Total | | | $323,571.25 |

### 3. Reasonable Out-of-Pocket Expenses

Defendants have not objected to Mr. Fattahi's request for out-of-pocket litigation expenses totaling $810.15. In light of the documentation attached to Mr. Fattahi's declaration, the Court views those expenses as reasonable and awards him $810.15 for reasonable out-of-pocket expenses in addition to the attorney's fees noted above.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion for Attorneys' Fees, and awards fees in the amount of $323,571.25.

**IT IS SO ORDERED.**

Dated:     9/21/16

Virginia A. Phillips
Chief United States District Judge