CENTER FOR DISABILITY ACCESS
Dennis Price, Esq., SBN 279082
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Sara Gunderson., SBN 302582
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love**, | Case No. 5:18-cv-00208-FMO-KK |
| Plaintiff, | **Plaintiff's Response re: Settlement** |
| v. | |
| **Manuel R. Cardenas;** **Margarita Arriaga;** and Does 1-10, | **Honorable Judge Fernando M. Olguin** |
| Defendant. | |

Plaintiff Samuel Love moved for summary judgment in this matter and that motion was granted by the court on June 17, 2019. In granting the motion, the Court required a motion on relief from the Plaintiff. That motion was filed on June 28, 2019. No timely opposition was filed by any party and plaintiff filed a notice of non-opposition on July 15, 2019. On August 1, 2019, a document styled as an opposition was late filed by the defendant Cardenas, no opposition was received by Arriaga[1]. In his "opposition" Cardenas disclosed settlement discussions surrounding an unconsummated global settlement discussion, which lead to the court requiring this response. Sara Gunderson prepared a declaration surrounding the circumstances of the failed settlement submitted alongside this brief. (Exhibit A – Declaration of Gunderson with attached exhibits A1-A16)

## I. NO SETTLEMENT WAS FINALIZED

The parties reached a tentative settlement of $9,000 as part of the L.R. 7-3 discussion that lead to the filing of the summary judgment motion ("MSJ"). This settlement was understood to be "Global", meaning as to all parties, and required payments by each entity. (Exhibit A1- "Global Settlement Term Sheet). This agreement was memorialized with Plaintiff and the Cardenas based on a prior understanding that Arriaga would contribute to settlement of the suit and was premised on that agreement. As the parties conferred separately regarding the MSJ, Arriaga did not sign the term sheet. Despite the prior representation of being $2,500 to settle

---

[1] Plaintiff conferred with Mr. Chandler, attorney for Arriaga in preparing the motion for relief under L.R. 7-3. He indicated he did not intend to oppose the motion provided the request was reasonable. Defendant Cardenas did not participate in the M&C efforts.

the matter and anticipating a discussion of further contribution from the tenant, defendant Arriaga did not ascent to this agreement and as a result the global settlement fell through and the motion for summary judgment was ultimately filed.

It was understood by all parties that this settlement agreement was not effective due to lack of a meeting of the minds.[2] (See: Docket 36 pg 6, ln 12-17. "...was unable to reach a settlement..."). This was not a result of bad behavior, bad faith, or lack of effort from the Plaintiff. Plaintiff attempted to resolve this matter for a fraction of the amount sought in his summary judgment motion, and agreed to multiple changes at the request of Cardenas to attempt to do so. (Exhibit A6-A7 – Agreeing to extended remediation periods). While after realizing the agreement would not be consummated, Cardenas wanted to settle the matter separately from Arriaga, Plaintiff never agreed to do so and is under no obligation to settle piecemeal, as was discussed in their first 7-3 meeting re plaintiff's motion for summary judgment. Further, he is justified in not wanting to do so. There are numerous reasons for why a plaintiff would insist on a settlement being global, but the largest in an ADA case is simply a matter of remedy. The ADA allows for injunctive relief, and reaching an agreement on injunctive relief in which the operator of the facility is not a party, is simply not a resolution that gives confidence that a facility will be brought into, or remain in, compliance.

---

[2] It is unclear how it could be effective without the signature of a party bound by the agreement. The agreement explicitly anticipated payment of $2,500 by Arriaga. (Ex. A1 ¶ 2). The agreement plainly could not bind a party without their agreement. It is unclear how the court could even enforce this settlement agreement if it were inclined when a material term involves a party without agreement.

Plaintiff wanted to settle this matter, and this is evident by the attached declaration of Ms. Gunderson (Exhibit A): she made concerted efforts to try and consummate that global agreement prior to filing the MSJ. Ultimately, plaintiff is obligated to prosecute his case in absence of a resolution, and numerous courts in this District will require prosecution of a claim even in the presence of an agreement unless the matter is dismissed. Plaintiff and his counsel are well aware that the scheduling orders in this district are meant to be firm, even when relief is sought as a result of a failed settlement. No dismissal was possible in this case as the required parties did not agree to the tentative terms of the global settlement agreement, and thus plaintiff properly prosecuted his case.

The Court seems to be under the impression that Plaintiff pulled the rug out from under the Defendants in this matter. However, the opposite is the case. Plaintiff agreed to a relatively low settlement amount as well as an extended remediation plan out of recognition of the financial status of the Defendants. Plaintiff relied in good faith on a representation from Arriaga's counsel just *three days earlier* that she would contribute their portion of the agreement, but after reaching an agreement, she apparently reneged on the offer. Perhaps the $2,500 was offered but never expected to be accepted? Perhaps there was a change of heart? It is unclear. But Plaintiff was not obligated to settle out one party as a result, and no agreement was reached. As a result, Plaintiff's counsel had to scramble to file a MSJ against the deadline.

### A.   "Failure to Disclose" the Settlement

In the court's order dated August 19, 2019, it was noted that Plaintiff "failed" to disclose the existence of the settlement history in the summary judgment motion. This fact wasn't disclosed because disclosure

would have been improper. Settlement history is protected from disclosure because of a public policy favoring confidentiality of this discussions. *Phoenix Solution v. Wells Fargo Bank*, 254 F.R.D. 568, 583 (N.D. Cal. 2008). There is a well-established, "inherently confidential" character relating to settlement discussions that goes beyond admissibility, but extends to pretrial disclosure. *Cook v. Yellow Freight* 132 F.R.D. 548, 554. (E.D Cal.); *Four in One, Inc. v. S.K. Foods, L.P.* 2014 WL 4078232, fn 1; *Kong v. Chorlian* CV-18-2924-DMG (C.D. Cal.) (Ex B – Chorlian Order Striking and Sealing Report Containing Substantive Settlement Discussion)

Put more succinctly, the evidence of a failed settlement agreement was not only not a "relevant fact", as it did not pertain to any aspect of the legal dispute in the motion, but it would have been improper to include it. All parties involved believed this matter was not settled. Regardless of how much the Plaintiff and Mr. Cardenas wanted to have this matter resolved prior to filing the motion, Arriaga did not agree to execute the agreement, and no global settlement was reached.

## II.  LIABILITY OF THE TENANT

In the Court's August 19, 2019 order, it makes reference to the *Kohler* decision in questioning if liability is properly assessed to defendant Arriaga. This case does not apply. "There is no dispute that both landlords and tenants have compliance obligations under the ADA." *Kohler v. Bed Bath & Beyond of California, LLC* (2015, 9th Cir.) 780. F.3d 1260, 1265. *Kohler* goes further in explaining the logic of this provision, and explains the relationship between the lease arrangements of an entity. *Id. Kohler* stands for a limited proposition that when a violation occurs in an area in which control is *exclusively* under the purview of the landlord, the tenant is

not accountable. *Id.* at 1266. This is a fact intensive analysis that would require specific circumspect lease terms limiting the lessee's leasehold to exclude the parking facilities. Here, absent any lease at all, we have to defer to the ADA's obligation putting liability on the tenant and the landlord of the facility. Assuming *Kohler* on any violation in which a landlord could be liable would effectively eliminate the separate obligation to each entity encompassed in 28 U.S.C. § 12182.

The record in this case supports liability against both Defendants. In the Arriaga's Answer, they admit parking is a service offered to their customers. (Docket 14 - ¶12). Defendant Arriaga does not make any claims in their affirmative defenses that they were unable to comply or that they lacked a possessory interest, but in fact goes further and alleges that they DID offer compliant parking. (Docket 14 – Fourth Affirmative Defense). Defendant Arriaga did not claim indemnity[3] against the landlord, nor did she make any claims about her lack of control of the premises that would give an inference to the existence of a lease that limited her control. Instead at every opportunity, it was admitted that they tenants controlled the area subject to this litigation.

During discovery, and indeed in not opposing the motion for relief in which Plaintiff made clear that separate liability was sought against both Cardenas and Arriaga, Arriaga failed to produce a lease or make any argument demonstrating that she did not have a lease interest in the parking lot at the premises. Further, Arriaga had apparent affirmative control over the parking lot in that she was able to hire a CASp to inspect the entirety of the facility, including the parking lot, which identified

---

[3] While an indemnity provision would not absolve Arriaga from liability, it would at least put Plaintiff on notice of a potential lease that contemplated exclusive landlord control over the premises.

numerous barriers. The only suggestion that Arriaga may not have liability as a result of the narrow *Kohler* decision appears to have come from the Court. There is no factual record that supports this suggestion, and there is plenty of facts that refute it. As a matter of law, all operators, owners, lessors and lessors share in the obligation to keep a property compliant with the ADA. The Defendants each separately failed in this obligation, and each separately violated the ADA giving rise to Unruh liability.

### III.  CONCLUSION

The Plaintiff proved his case against each defendant. Despite the best effort of the Plaintiff, who did nearly all of the leg work in trying to consummate the failed global settlement agreement, this matter was not resolved prior to the MSJ. Plaintiff's motion and relief should be granted in its entirety.

Dated: August 19, 2019            CENTER FOR DISABILITY ACCESS

                                  By:__/s/ Dennis Price_____
                                  Dennis Price
                                  Attorney for Plaintiff