CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Sara Gunderson, Esq., SBN 302582
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
sarag@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love,**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**Manuel R. Cardenas;**<br>**Margarita Arriaga,**<br><br>　　Defendants. | **Case:** 5:18-CV-00208-FMO-KK<br><br>**Declaration of Sara Gunderson** |

　　I, the undersigned, am one of the attorneys for plaintiff, Samuel Love, and in that capacity of have familiarity with this case. I can competently testify to the following based on my own knowledge.

1. I met and conferred in person with counsel for defendant Arriaga, Mr. Chandler, on October 5, 2018, regarding plaintiff's intention to move for summary judgment.

2. I met and conferred in person with defendant Cardenas, who was accompanied by his daughter, Monica Rodriguez, on October 8, 2018 regarding plaintiff's intention to move for summary judgment.

3. Settlement was discussed during each meeting as well as the anticipated

motion.

4. On October 5, 2018, during our meeting, Mr. Chandler said that his client, Ms. Arriaga, was offering a total of $2,500 to settle. I said that was likely not enough to reach settlement or stave off an MSJ, unless a global settlement were reached. I told Mr. Chandler I would know more after my meeting with Mr. Cardenas on October 8, 2018 and asked if I could convey the amount defendant Arriaga was offering. Mr. Chandler said that was fine.

5. On October 8, 2018 Defendant Cardenas was accompanied by his daughter Monica Rodriguez at our in-person meet and confer; Monica translated on his behalf (mostly). After discussing plaintiff's intention to move for summary judgment and his grounds and reasoning, I handed them a document of plaintiff's points and authorities. We then began to discuss settlement. After hearing their side of events, going over plaintiff's, and discussing various numbers, we reached a tentative agreement: the complained of barriers would be remediated, and the global monetary settlement would be $9,000: so long as it was a global settlement, with defendant Arriaga to pay $2,500, and Defendant Cardenas to pay $6,500.

6. We discussed other important terms that would be memorialized in the settlement agreement (such as a waiver of claims between the parties, confidentiality, electronic signatures, etc.). I drafted this Global Settlement Term Sheet by hand, ensuring that at the top of the page it stated Global Settlement Term Sheet, which I explained were material terms we were agreeing to memorialize in a formal settlement agreement which would be circulated among the parties and signed. The term sheet read 9K total – but only $6,500 from Defendant Cardenas with Defendant Arriaga providing $2,500. I explained, more than once, because defendant did not understand why, that plaintiff would only settle with both parties to dispose of the whole

lawsuit, and would not only settle with Mr. Cardenas for $6,500. Plaintiff was not willing to do piecemeal litigation. Plaintiff was willing to settle for a total of $9,000 – Defendant Cardenas could contribute $6,500 – if Defendant Arriaga contributed the remainder, $2500: that is what 'global' meant—settling with everyone and disposing entirely of the suit. If Defendant Arriaga did not assent to the terms of the agreement, then we had no agreement. I explained that we were agreeing to certain material terms, memorialized in the Term Sheet, which would be added to a formal settlement agreement that I would circulate, and Mr. Cardenas would need to sign in wet ink or via docu-sign.

7. Defendant Cardenas said he understood and agreed, and he signed the term sheet.

8. Mr. Cardenas also stated (sometimes he spoke, most of the time his daughter Monica translated) that he would speak with his tenant, Ms. Arriaga, to ensure that she signed the settlement agreement that was to be circulated. He said did not envision any problems.

9. He then stated that he would need a payment plan.

10. I then drafted my hand-written addendum to the term sheet with the dates of Mr. Cardenas's ability to make payments, and wrote that he would have to sign or assent to the stipulated judgment to be filed with the formal Settlement Agreement I said I would circulate to him and to Mr. Chandler (in the event Ms. Arriaga also need a payment plan).

11. Mr. Cardenas and I signed this addendum.

12. Attached as Exhibit 1 is a true and correct copy of the term sheet drafted during our meet and confer meeting re Plaintiff's motion for summary judgment.

13. Attached as exhibit 4 is the email I sent to Mr. Cardenas two days later, on October 10, 2018, with the Settlement Agreement and Stipulated Judgment

where I reference his need to sign in wet ink or via docu-sign as we discussed in our conference on October 8, 2018.

14. On October 8, 2018, the same day as the meet and confer with Defendant Cardenas, I contacted Attorney Chandler via email informing him that Plaintiff had agreed to a global settlement with all defendants for remediation of the complained of barriers, and for a total sum of $9000: Mr. Cardenas agreeing to pay $6500 and Mr. Chandler's client to pay $2500 (as was his offer on Friday, October 5th). I said I would circulate settlement documents in the next couple of days.

15. Attached as exhibit 2 is a true and correct copy of this email.

16. Two days later, on October 10, 2018, I sent Attorney Chandler settlement documents for Ms. Arriaga, consisting of the global settlement agreement and a stipulated judgment in case Ms. Arriaga wanted to do a payment plan.

17. Attached as exhibit 3 is a true and correct copy of this email.

18. The same day, October 10, 2018, I sent Mr. Cardenas an email with the settlement documents attached: the formal global settlement agreement as well as the stipulated judgment for the payment plan. The email read "During our meeting on October 8, 2018, Defendant Cardenas and the plaintiff agreed to certain terms of a global settlement agreement. The settlement documents are attached. Thank you for your timely review and signatures. The documents may be signed by ink and scanned and emailed back to us, or you may use docu-sign, as we discussed in the meeting on Monday."

19. Attached as exhibit 4 is a true and correct copy of this email.

20. Ms. Rodriguez, Mr. Cardenas's daughter, wrote back the same day. She stated that due to difficulties with repairs, she requested the settlement agreement be 365 days in lieu of 120 days to have the repairs completed.

21. Attached as exhibit 5 is a true a correct copy of this email by Ms. Rodriguez.

22. I wrote back, confirming that 365 days would be enough time to finish the repairs.

23. Attached as exhibit 6 is a true and correct copy of this email.

24. Attached as exhibit 7 is a true and correct copy of the email I sent with the updated settlement agreement depicting 365 days to remediate the property.

25. Attached as exhibit 8 is a true and correct copy of the updated Global Settlement Agreement between the parties, depicting 365 days to remediate the property and depicting Mr. Cardenas's payment plan.

26. After speaking with Mr. Chandler by phone, I updated the payment for defendant Arriaga in the settlement agreement to a one-time payment and forwarded him the updated Settlement Agreement on October 11. I also mentioned that I was worried that I had not heard back re assenting to the settlement agreement from defendant Arriaga.

27. Attached as exhibit 9 is a true and correct copy of this email. Attached as exhibit 7 is a copy of the attached global settlement, Settlement Agreement.

28. On October 15, I sent an email to all parties that I had not received the signed signature pages for defendants, and that I would be filing the motion for summary judgment on October 16 at 4 pm if the defendants did not provide their signed signature pages. I stated Plaintiff preferred to settle, but if settlement was desired by all, then defendants needed to send in their signed settlement agreements.

29. Attached as exhibit 10 is a true and correct copy of this email.

30. Later that night, at approximately 10 pm on October 15, I received an email from Mr. Cardenas's daughter with the signature pages of the global Settlement Agreement and Stipulated Judgment signed by defendant, Mr. Cardenas, dated October 12, 2018.

31. Attached as exhibit 11 is a true and correct copy of the email from Monica

1  Rodriguez.

2  **32.** Attached as exhibits 12 and 13 are true and correct copies of the signed signature pages of the global settlement agreement and stipulated judgment by defendant Cardenas, except the photos originally sent have been inserted into PDF documents for proper exhibit format.

**33.** I responded to Ms. Rodriguez and told her that Defendant Arriaga had not be responsive to the settlement and had not signed her settlement documents. I reminded her that as per our discussion of global settlement in our original in person meet and confer (as well as per the settlement documents), Ms. Arriaga had to sign the settlement agreement or there was no settlement between the parties. I recommended that her father contact his tenant and persuade her to sign the settlement agreement.

**34.** Attached as exhibit 14 is a true and correct copy of this email.

**35.** Ms. Rodriguez responded via email, saying she will have her father reach out to defendant Arriaga, in the hopes he will reach her right away.

**36.** Attached as exhibit 15 is a true and correct copy of this email.

**37.** I wrote attorney Chandler on October 16, 2018, including Mr. Cardenas on the email via cc, and stated: "I have been on the phone with Mr. Cardenas's daughter this morning, and defendant Cardenas is displeased that the global settlement cannot be reached due to Ms. Arriaga's refusal to sign the settlement contract (or her unexplained absence in the face of two weeks of settlement negotiations). As all parties are aware, Plaintiff will only accept a global settlement between all parties to dispose of the suit; so Mr. Chandler, if you can reach Ms. Arriaga today to sign the settlement agreement and forward it to me before 4 pm then we can work towards dismissing the lawsuit. However, if 4 pm comes and Ms. Arriaga's settlement contract is not signed and delivered, then Plaintiff will move for summary judgment. Thus, the offer

Decl. of Gunderson                                    Case: 5:18-CV-00208-FMO-KK

to globally settle this lawsuit for $9K expires today at 4 pm."

**38.** Attached as exhibit 16 is a true and correct copy of this email.

**39.** By 4 pm, Plaintiff had not received the signed global Settlement Agreement from defendant Arriaga, and the offer to settle globally for $9,000 lapsed.

**40.** Plaintiff filed his motion for summary judgment that evening.

**41.** I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Dated: August 16, 2019          Center for Disability Access

                                By: */s/ Sara N. Gunderson*
                                Sara Gunderson
                                Attorneys for Plaintiff